No. 22-35096

_____

**UNITED STATES COURT OF APPEALS**

**FOR THE**

**NINTH CIRCUIT**

_____

KIPLAND KINKEL,

Petitioner-Appellant,

v.

GERALD LONG,

Respondent-Appellee.

_____

Appeal from the United States District Court

for the District of Oregon

_____

**APPELLANT'S REPLY BRIEF**

_____

Thaddeus Betz                     Marsha Levick
Law Office of Thaddeus            Juvenile Law Center
155 NW Hawthorne Ave             1800 JFK Boulevard, Suite 1900B
Bend, OR 97703                    Philadelphia, PA 19103
(541) 389-6964                    (215) 625-2808

Attorneys for Petitioner-Appellant

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...................................................................1

ARGUMENT ...........................................................................................1

I.  Respondent misstates the Eighth Amendment standard for
    sentencing a child to die in prison ...................................................1

    A.  Respondent misstates the requirement of *Miller*...................1

    B.  Respondent's legal framework is incorrect as a matter of law
        And ultimately supports Kinkel's argument ........................3

II. Contrary to Respondent's arguments, the Kinkel's Eighth Amendment
    argument was rejected by the 1999 sentencing court and Oregon
    Court of Appeals................................................................................4

III. Respondent's argument depends upon factual findings that do
     not appear in, and are contrary to, the record ...................................6

IV. Respondent's argument that Kinkel is serving a discretionary
    sentence is incorrect.........................................................................7

V.  Respondent's *Graham* argument fails because it mistakes the
    record and does not properly address the Eighth Amendment's
    categorical protection.......................................................................12

CONCLUSION ....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Alabama,*
  578 U.S. 994 (2016).............................................................................2

*Atkins v. Virginia*,
  536 U.S. 304 (2002)...........................................................................12

*Eddings v. Oklahoma,*
  455 U.S. 104 (1982).............................................................................1

*Graham v. Florida*,
  560 U.S. 48 (2010).............................................................3, 5, 12, 13, 14

*Harmelin v. Michigan,*
  501 U.S. 957 (1991)...........................................................................13

*Jessup v. Shinn,*
  31 F.4th 1262 (9th Cir 2022) .............................................................12

*Jones v. Cain*,
  2023 WL 2004080 (N.D. Miss. Feb. 14, 2023)..................................2

*Jones v. Mississippi*,
  141 S. Ct. 1307 (2021)..................................................................1, 2, 3

*Kennedy v. Louisiana*,
  554 U.S. 407 (2008)...........................................................................12

*Kinkel v. Persson*,
  276 Or. App. 427, 367 P.3d 956 (2016) ............................................4

*Kinkel v. Persson*,
  363 Or. 1, 417 P.3d 401 (2018), *cert den.,* 139 S. Ct. 789 (2019).............4, 6

*Larsen v. Board of Parole and Post-Prison Supervision*,
    191 Or. App. 526, 84 P.3d 176 (2004) ...........................................................10

*Miller v. Alabama,*
    567 U.S. 460 (2012)..................................................................................*passim*

*Montgomery v. Louisiana,*
    577 U.S. 190 (2016)...................................................................................3, 11

*Papai v. Harbor Tug & Barge Co.,*
    67 F.3d 203 (9th Cir. 1995),
    *rev'd on other grounds*, 502 US 548 (1997) ................................................10

*Roper v. Simmons,*
    543 U.S. 551 (2005)....................................................................................5, 12

*State v. Ambill,*
    282 Or. App. 821, 385 P.3d 1110 (2016) .......................................................7

*State v. Davis,*
    216 Or. App. 456, 174 P.3d 1022 (2007) .......................................................8

*State v. Davidson,*
    369 Or. 480, 509 P.3d 246 (2022) ..................................................................9

*State v. Francis*,
    154 Or. App. 486, 962 P.2d 45,
    *rev. den.*, 327 Or. 554 (1998) ........................................................................7

*State v. Giles,*
    254 Or. App. 345, 293 P.3d 1086 (2012) .......................................................7

*State v. Haynes,*
    168 Or. App. 565, 7 P3d 623 (2000) ..............................................................9

*State v. Hubbard,*
    290 Or. App. 640, 417 P.3d 498 (2018) ........................................................9

*State v. Leathers*,
    271 Or. 236, 531 P.2d 901 (1975) ...........................................................9, 11

*State v. McLain,*
    158 Or. App. 419, 974 P.2d 727 (1999) ........................................................7

*State v. Ventris,*
    299 Or. App. 124, 449 P.3d 899 (2019) ........................................................9

*Tatum v. Arizona*,
    580 U.S. __, 137 S. Ct. 11 (2016) ................................................................4

## Constitutional & Statutory Provisions

Or. Laws 1999, 782, § 2 .......................................................................................10

Or. Laws 1999, ch 782, § 4 ...................................................................................9

Or. Rev. Stat. § 144.110(2)(b)(B) ........................................................................9

Or. Rev. Stat. § 163.105(4) .................................................................................10

Or. Rev. Stat. § 163.115 ..........................................................................8, 9, 10, 12

Or. Rev. Stat. § 163.115(5)(c) to (e) ....................................................................9

U.S. Const, Amendment VIII .......................................................................*passim*

## Rules

Fed. R. Ev. 201 ....................................................................................................10

# SUMMARY OF ARGUMENT

Kinkel was denied the right under the Eighth Amendment as interpreted in *Miller* to have his youth appropriately considered before the sentencing court imposed a sentence that guarantees he will die in prison. In 1999, Kinkel's argument that his youth mattered under the Eighth Amendment was rejected by the sentencing court and the Oregon Court of Appeals. The sentencing court compared Kinkel to an adult with a mental illness and it ignored the testimony that he was amenable to treatment and his mental illness was treatable. The sentencing court stated that, under Oregon's then Measure 11 sentencing scheme, he had no "flexibility" in imposing conditional long term sentence. The court then imposed a sentence for 112 years, with 87 years of that sentence for non-homicide crimes, which *Graham* categorically prohibited the sentencing court from imposing.

# ARGUMENT

## I.    Respondent misstates the Eighth Amendment standard for sentencing a child to die in prison.

### A.    Respondent misstates the requirement of *Miller*.

Respondent's Eighth Amendment argument fails as it is based on a faulty legal premise. Specifically, Respondent advances that "because the sentencing court had discretion to consider Kinkel's youth and to impose a lesser punishment, the Oregon Supreme Court's decision was not contrary to or an unreasonable application of federal law." Appellee's Brief ("App. Br.") at 23.

1

*Miller* and *Jones* command more. To be sure, *Miller* instructs that "youth is more than a chronological fact." *Miller v. Alabama,* 567 U.S. 460, 476 (2012) (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 115 (1982)). It is instead the hallmark features of youth that bear constitutional significance when sentencing children. *Miller* recognized those features to include "psychological damage" in addition to "immaturity," "susceptibility," "recklessness," and others. *Id.* at 476 (internal citations omitted). *Miller* concluded that these "signature qualities are all transient." *Id.* (internal quotations omitted). Finally, *Miller* commanded that a sentencer "take into account how children are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 U.S. at 480. To be sure, "[Miller] did not merely impose an 'individualized sentencing requirement,' it imposed a substantive rule that life without parole is the only appropriate punishment for 'the rare juvenile offender whose crime reflects irreparable corruption.'" *Adams v. Alabama*, 578 U.S. 994 (2016) (citation omitted).

Simply note the procedural history of *Jones*. The defendant in Jones was sentenced in May of 2005. *Jones v. Cain*, No. 1:22CV62-MPM-JMV, 2023 WL 2004080, at *2 (N.D. Miss. Feb. 14, 2023). When *Miller* was decided, the Mississippi Supreme Court granted Jones a resentencing where the "*Miller* characteristics and circumstances [can be] considered]. *Id*. at 5. At Jones'

2

resentencing proceeding in 2015, the sentencing court "conducted an evidentiary hearing and considered those factors in *Jones* and *Miller*[.]" *Id*. at 6. The Supreme Court endorsed this procedure, as consistent with the Eighth Amendment, and held that no specific findings need be made by a sentencing court. *Jones v. Mississippi*, 141 U.S. __, 141 S. Ct. 1307, 1319 (2021). However, *Jone*s reiterated:

> That *Miller* did not impose a formal factfinding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole. To the contrary, *Miller* established that this punishment is disproportionate under the Eighth Amendment."

*Jones*, 141 S. Ct. at 1315 (2021) (citation omitted).

Therefore, Respondent is simply incorrect. Mere consideration of age is constitutionally insignificant if the sentencer does not also recognize that the very qualities influencing Mr. Kinkel's crime are transitory and that they counsel against delivering a true-life sentence. The Eighth Amendment requires more than a recognition of math, it requires the sentencer to weigh the attendant qualities of youth and, unless irredeemable, sentence the offender to some possibility of release. *Jones* was entitled to that procedure; Kinkel was not.

**B. Respondent's legal framework is incorrect as a matter of law and ultimately supports the Kinkel's argument.**

Respondent further asserts that Kinkel's sentence is constitutional because his offense, "if committed by an adult" would reflect an "irretrievably depraved character." App. Br. at 25. At best, this is a tortured and unreasonable application

of *Miller*. There is no Supreme Court case—whether it be *Jones*, *Montgomery*,

*Miller*, or otherwise—that proposed, or even hints that a correct Eighth

Amendment analysis should compare the actions of a child to the actions of an

adult. To the contrary, the entire rationale of *Roper*, *Graham*, *Miller*, *Montgomery*,

*Tatum*, and *Jones* is that children are constitutionally different than adults for

sentencing purposes. Despite respondent's suggestion, the child cannot become an

adult for purposes of the Eighth Amendment; the transitory conditions, including

"psychological damage" are constitutionally wedded to the condition of youth.

Here, the 1999 sentencing court did precisely the opposite and violated the

Eighth Amendment in the process. The court took unrebutted testimony that the

Kinkel's condition was treatable and that he "could be safely returned to the

community." 6-ER-1260. However, in imposing the sentence, the court compared

the Kinkel to the actions of an adult, violating the core promise of *Miller*. 6-ER-

1451-1452. To be sure, if an adult committed the crimes that Kinkel did, that adult

may very well be incapable of rehabilitation. But Kinkel was not an adult, he was

a child. The Oregon Supreme Court's framing, adopted by the Respondent, is an

unreasonable application of law.

**II.    Contrary to Respondent's arguments, the Kinkel's
       Eighth Amendment argument was rejected by the 1999 sentencing
       court and Oregon Court of Appeals.**

Respondent asserts that the 1999 sentencing court did not reject Kinkel's Eighth Amendment arguments. App. Br. at 27-28. This fact is critical to the Respondent's position because if the 1999 court did reject Eighth Amendment boundaries in sentencing a child, the Kinkel is entitled to relief as a matter of law.

Contrary to Respondent's position, the Kinkel's 1999 Eighth Amendment arguments are well documented. Indeed, in *Kinkel v. Persson*, 276 Or. App. 427, 444, 367 P.3d 956 (2016), the court of appeals held that Kinkel was procedurally barred, under the state's post-conviction relief act, from raising a *Miller* claim because he had "raised those arguments before the trial court and on direct appeal." The Oregon Supreme Court agreed: "Kinkel's counsel [at sentencing] advanced virtually the same arguments that later informed the Court's decision in *Miller…*" *Kinkel v. Persson*, 363 Or. 1, 8–9, 417 P.3d 401 (2018).

Of course, at the time Kinkel raised his claims, *Miller* had not yet been decided, and the sentencing court simply did not know that a true-life sentence for "a child whose crime reflects transient immaturity…is disproportionate under the Eighth Amendment." *Miller* 577 U.S. at 211. At the time the 1999 sentencing court decided Kinkel had no protection from the Eighth Amendment in sentencing, neither *Roper*, protecting a child from execution, nor *Graham*, protecting a child from a life without parole sentence for non-homicide crimes, had been decided. In 1999, Kinkel advanced a novel argument. That novel argument, rejected at both

5

sentencing and on direct appeal, later became substantive law in 2012 under

*Miller*.

Respondent's suggestion otherwise is entirely incorrect, and their argument

fails as a result. If the pre-*Miller* 1999 sentencing court rejected the very

framework that *Miller* rested upon, then how could a post-*Miller* 2017 Oregon

Supreme Court deduce findings consistent with a standard the sentencer did not

even know existed? Plainly, they cannot. Therefore, the Oregon Supreme Court's

decision is an unreasonable application of *Miller*.

### III. Respondent's argument depends upon factual findings that do not appear in, and are contrary to, the record.

Respondent submits that Kinkel's sentence is not disproportionate under the

Eighth Amendment due to "the sentencing court's findings that Kinkel's disorder

was not a function of his youth[.]" App. Br. at 25. Simply put, this finding was

never made by the sentencing court; Respondent cannot, and would not be able to,

cite to the sentencing court for this finding. This statement, made for the very first

time by a court of review, the Oregon Supreme Court, is simply invented out of

whole cloth. It is hard to conceive of a better example of an "unreasonable

determination of fact" than asserting a sentencing court made a finding it never

made.

Respondent curiously puts forward the argument that the Oregon Supreme

Court made no findings of fact at all. App. Br. at 30. If that is true, then Kinkel is

6

entitled to habeas relief. Very simply, when Kinkel was sentenced, the sentencing court acknowledged that the undisputed evidence yielded that his condition was treatable. *Kinkel*, 363 Or at 33. If treatable, then Kinkel cannot fall into a class of the irreparably corrupt, and, necessarily, his sentence is disproportionate under the Eighth Amendment.

## IV. Respondent's argument that Kinkel is serving a discretionary sentence is incorrect.

Respondent argue that "Kinkel does not dispute, none of his convictions carried a *mandatory* true-life sentence." App. Br. at 22-23 (emphasis in original). Respondent misrepresents Kinkel's argument and Oregon law.

After April 1, 1995, the only penalty for murder was life imprisonment with a 25-year minimum sentence without the possibility of parole. *State v. Francis,* 154 Or. App. 486, 489, 962 P.2d 45, *rev. den.,* 327 Or. 554 (1998); *see also State v. Ambill,* 282 Or. App. 821, 827, 385 P.3d 1110 (2016) ("[T]he correct sentence for murder was an indeterminate life sentence of imprisonment with a mandatory minimum term of incarceration of 25 years[.]") Parole was not authorized. *State v. McLain,* 282 Or. App. 821, 827, 385 P.3d 1110 (2016). Because there was no mechanism to release persons convicted of murder for crimes committed after November 1, 1989, "the sentence was, in effect, a 'true life' sentence, because there was no possibility of parole." *State v. Giles,* 254 Or. App. 345, 347-348, 293 P.3d 1086 (2012). Thus, as a matter of Oregon law, when Kinkel committed his

crime, the crime of murder provided a mandatory "true-life" sentence because there was no possibility of parole or release from that sentence.

Respondent may be arguing that Kinkel's particular sentence for murder did not carry a "mandatory true-life sentence" because the court did not impose an indeterminate life sentence, but only a mandatory minimum of 25 years followed by a life term of post-prison supervision. If so, respondent would again be incorrect in their interpretation of established Oregon law. Kinkel's current sentence still mandates he serve the remainder of his life in prison.

First, to be clear, the sentencing court was mandated to impose an indeterminate sentence of life imprisonment on Kinkel for his crimes of murder. In *Davis,* the Oregon Court of Appeals explained:

> "[I]f a defendant [who committed murder after April 1, 1995, but before *State v. McLain*, 158 Or App 419, 974 P2d 727 (1999) was decided] had been originally sentenced after the effective date of the 1999 amendments [to Or. Rev. Stat. § 163.115], the only sentence that the trial court could lawfully have imposed was that prescribed by ORS 163.115(5), *viz.,* life imprisonment with a 25-year minimum. * * *"

See *Davis,* 216 Or. App. 456, 465-466, 174 P.3d 1022 (2007). The 1999 amendments referred to in *Davis* were those enacted under Oregon Laws 1999, chapter 782, § 2. Those amendments have an effective date of October 23, 1999. See Or. Laws 1999, chapter 782. Kinkel was sentenced on November 10, 1999, approximately two weeks after the effective date of the 1999 amendments to Or. Rev. Stat. § 163.115. Accordingly, under *Davis*, and numerous cases that have

8

addressed this issue, the "only sentence that the trial court could lawfully have imposed was * * * life imprisonment with a 25-year minimum." 216 Or. App. at 466. *See also State v. Hubbard,* 290 Or. App. 640, 417 P.3d 498 (2018) (reversing trial court's amended sentence for 1998 murder defendant that deleted "life in prison"); *State v. Ventris,* 299 Or. App. 124, 449 P.3d 899 (2019) (same result for juvenile convicted of murder in 1996, requiring imprisonment for life sentence).

If that is not the sentence Kinkel is currently serving, then his sentence for murder is "void for lack of authority and thus totally without legal effect." *State v. Leathers,* 271 Or. 236, 240, 531 P.2d 901 (1975). *See also State v. Davidson*, 369 Or. 480, 485, 509 P.3d 246 ("A sentence must be authorized by the governing statute under which it is imposed.") (citing *Leathers*). That being true, Kinkel has been and is currently being unlawfully held in the custody of the Oregon Department of Corrections for the crime of murder and he is entitled to immediate release to his other non-homicide sentences.

Second, the legislative amendments to Or. Rev. Stat. § 163.115 mandate that Kinkel demonstrate to the board, after completing 25 years of imprisonment, that he is "likely to be rehabilitated within a reasonable period of time" before he can be released onto post-prison supervision or parole. *See* Or. Rev. Stat. § 163.115 (1999); Or. Laws 1999, ch 782, § 4. *See also* Or. Rev. Stat. § 144.110(2)(b)(B) ("The board shall not release a prisoner on parole * * * [w]ho has been convicted

9

of murder under the provisions of Or. Rev. Stat. § 163.115, except as provide in

Or. Rev. Stat. § 163.115(5)(c) to (e)). That is the only mechanism authorizing

Kinkel's release from his murder sentence and the legislature has explicitly made

those requirements retrospective in application to Kinkel. *See State v. Haynes*, 168

Or. App. 565, 568, 7 P3d 623 (2000) (so holding); Or. Laws 1999, 782, § 2 (parole

provisions apply "to offenders convicted of * * * murder * regardless of the date of

the crime."). Until that release process is satisfied, the board has no authority to

release a person convicted of murder. *See Larsen v. Board of Parole and Post-*

*Prison Supervision*, 191 Or. App. 526, 534, 84 P.3d 176 (2004) (construing same

process for aggravated murder and holding that the board lacks the authority "to

alter the terms of confinement to permit the possibility of parole * * * in the

absence of the finding required by Or. Rev. Stat. § 163.105(4)).

On March 6, 2023, the board of parole denied Kinkel's request for a murder

review hearing under Or. Rev. Stat. § 163.115 (1999).[1] The board reasoned that

Kinkel is ineligible for such a hearing because he is not serving a life sentence. As

noted above, if that is correct, his current sentence is "void for lack of authority

---

[1]     Kinkel will separately move this court pursuant to F. R. Ev. 201, to take judicial notice of the March 6, 2023, letter of the board of parole. Materials from a proceeding in another tribunal are appropriate for judicial notice. *Papai v. Harbor Tug & Barge Co.,* 67 F.3d 203, 207 n. 5 (9th Cir. 1995), *rev'd on other grounds*, 502 US 548 (1997).

and without legal effect. *Leathers,* 271 Or. at 240. Alternatively, if the board is incorrect in its interpretation of Or. Rev. Stat. § 163.115 (1999), Kinkel is currently being deprived of any process for release and is thus serving a "true-life" sentence for the crime of murder.[2]

Finally, regardless of whether the state, under some strained interpretation of the laws of murder in 1999, persists in representing that Kinkel's sentence was not mandatory,[3] the words of the 1999 sentencing court are what should matter:

> "Given the mandatory nature of Measure 11 sentences, I do not have the flexibility to structure any kind of long-range conditional sentence, even were it appropriate to so do, and I do not believe it is."

6-ER-1454.

The sentencing court was thus under the belief (albeit mistaken) that it could not impose a "conditional sentence," i.e., one that was different than what Measure 11 mandated, when he sentenced Kinkel. Had the sentencing court not rejected Kinkel's multiple attempts to persuade the court that the Eighth Amendment required that flexibility in sentencing to life without any possibility of parole, in the manner that the court in *Miller* and *Montgomery* later recognized, it would not

---

[2]     Kinkel intends to challenge the board's decision in state court.

[3]     In order to clarify any dispute about the precise terms of the Kinkel's sentence, Kinkel moved the district court to certify this very question to the state court. Respondent opposed this motion and the District Court denied the Kinkel's request. Kinkel renews that motion with this Court and will file the appropriate motion.

have said that it had no discretion under Measure 11 to impose a long-range conditional sentence. *Cf. Jessup v. Shinn,* 31 F.4th 1262, 1267-68 (9th Cir 2022) (noting in rejecting *Miller* claim that nothing "in the record suggest that the precise form of potential release at issue had any effect on the sentencing judge's exercise of discretion.).

For these reasons, the respondent's argument is incorrect. Kinkel's sentence for murder was mandatory life without the possibility of parole or release both at the time he committed his crime and apparently presently under the board's refusal to provide him the release process provided in the 1999 amendments to Or. Rev. Stat. § 163.115.

## V. Respondent's *Graham* argument fails because it mistakes the record and does not properly address the Eighth Amendment's categorical protection.

The Eighth Amendment's prohibition on cruel and unusual punishment falls, generally, into two categories. *Miller*, 567 U.S. at 469. The first imposes categorical bars on a class of offenders. In this line of cases, the Supreme Court imposed bright line rules simply barring the use of particular penalties on classes of cases. *Kennedy v. Louisiana*, 554 U.S. 407 (2008) (barring capital punishment for nonhomicide crimes); *Atkins v. Virginia*, 536 U.S. 304 (2002) (barring capital punishment on intellectually disabled defendants); *Roper v. Simmons*, 543 U.S.

551 (2005) (barring capital punishment on juveniles); *Graham*, 560 U.S. 48 (2010) (barring life without parole for a non-homicide offense).

The second involves challenges to a sentence given all the circumstances in a particular case. *Graham*, 560 U.S at 59. *Harmelin v. Michigan*, 501 U.S. 957, (1991) (Eighth Amendment did not forbid life sentence for large quantity of cocaine).

Kinkel's habeas corpus petition raised both grounds. 2-ER-72. In one category of claims, he asserted that sentencing a child to die in prison violated the Eighth Amendment where that child is not permanently incorrigible. As *Miller* recited, this claim finds its support in both lines of precedent in that it both requires individualized consideration of a child offender and also bars a life without parole sentence but for a certain category of juvenile offender. *Miller* 567 U.S. at 470.

Separately, Ground 4 asserted that Kinkel's 87-year *de facto* life sentence for non-homicide crimes violates the Eighth Amendment. 2-ER-95. This is a strictly categorical claim under the Eighth Amendment—one that does not depend on any individualized consideration of the offender nor the crime or crimes.

The Oregon Supreme Court resolved all of Petitioner's challenges by asserting that Petitioner falls within the class of individuals who are not capable of reform. *Kinkel*, 363 Or. at 24. This is unreasonable application of law with respect to Petitioner's *Graham* claim because such a ruling only addresses the *Miller* line

13

of Eighth Amendment precedent. Such a ruling simply fails to address Petitioner's categorical claim.

Respondent argues that Petitioner's categorical argument fails because Petitioner committed both homicide and non-homicide offenses. Resp Br at 36. This argument mistakes the sentence that Petitioner is serving. In fact, the State of Oregon is now asserting that Petitioner's homicide sentences expire after 25 years. Granting the respondent that concession, Petitioner will be serving a *de facto* life without parole sentence for non-homicide offenses when his murder sentence expires. As a result, *Graham's* categorical bar on such sentences is violated.

Insofar as Respondent suggests the quantum of non-homicide crimes exclude Petitioner from the protections of *Graham*, this argument is incorrect and confuses the categorical approach. A simple examination of *Graham* proves the point. That offender was originally sentenced to probation. It was only after the offender continued to commit serious violent felonies, some that he admitted to, that the court revoked his supervision and sentenced him to life in prison. *Graham,* 560 U.S. at 53-55. The ruling in *Graham* was premised on the defendant having "committed, we can assume, serious crimes early in his term of supervise release" in an "escalating pattern of criminal conduct". *Graham* at 73. *Graham* is further premised on presuming that an offender is indeed incorrigible. *Id*. Therefore, *Graham* means what it says—categorical protection for juveniles serving non-

14

homicide sentences. If Respondent were correct that a quantum of conduct constitutes an exception to a categorical bar on certain penalties, then juveniles who committed enough murders could be eligible for the death penalty, cognitively impaired individuals who committed enough murders could be executed, and an adult offender who committed some quantum of non-homicide person offenses could be executed. This, of course, would make a categorical approach meaningless. Therefore, the Petitioner is entitled to relief.

## CONCLUSION

Kinkel respectfully requests the district court's judgment to be reversed, and this case remanded with instructions to enter judgment granting relief on all of Kinkel's habeas claims.

DATED: March 22, 2023

/s/ *Thaddeus Betz*
THADDEUS BETZ

/s/ *Marsha Levick*
MARSHA LEVICK

Attorneys for Petitioner-Appellant

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| KIPLAND KINKEL, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | CA No. 22-35096 |
| | ) | |
| v. | ) | |
| | ) | |
| GERALD LONG, | ) | |
| | ) | |
| Respondent-Appellee, | ) | |

_____

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

_____

1.      The brief is within the limitations set out in Fed. R. App. P 32(a)(7)(A)

which allows no more than 15 pages.

2.      This brief complies with the type-face requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced type face using Word 2019 in

14-point Times New Roman font.

DATED: March 22, 2023

/s/ *Thaddeus Betz*_____
THADDEUS BETZ

Attorney for Petitioner-Appellant

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2023, I electronically filed the foregoing Appellant's Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Thaddeus Betz*
THADDEUS BETZ

Attorney for Petitioner- Appellant