No. 22-35096

———————————————

## UNITED STATES COURT OF APPEALS

## FOR THE

## NINTH CIRCUIT

———————————————

KIPLAND KINKEL,

Petitioner-Appellant,

v.

GERALD LONG,

Respondent-Appellee.

———————————————

Appeal from the United States District Court

for the District of Oregon

———————————————

## APPELLANT'S REPLY TO APPELLEE'S RESPONSE TO MOTION TO CERTIFY QUESTIONS TO THE OREGON SUPREME COURT

———————————————

Thaddeus Betz
Law Office of Thaddeus Betz, LLC
155 NW Hawthorne Ave
Bend, OR 97703
(541) 389-6964

Marsha Levick
Juvenile Law Center
1800 JFK Boulevard, Suite 1900B
Philadelphia, PA 19103
(215) 625-2808

Attorneys for Petitioner-Appellant Kipland Kinkel

Appellee (hereafter "the State") opposes Appellant's Motion to Certify Questions to the Oregon Supreme Court on grounds that are irrelevant to the criteria this Court considers in deciding whether to certify questions to the Oregon Supreme Court under *Western Helicopter Services., Inc. v. Rogerson Aircraft Corp.,* 311 Or. 631 (1991). More importantly, the State concedes that the questions may be determinative of the cause. Thus, the State offers no real ground to dispute certification under the *Western* criteria. This Reply will address the matters raised in the State's Response. Fed. R. App. P. 27(a)(4).

## A. The State's Arguments Opposing Certification Fail to Address the Criteria under *Western Helicopter Services*.

The State submits three primary objections to state certification all of which avoid the legal question or support certification. First, the State opposes certification because "those questions are likely to be decided by the Oregon Court of Appeals[.]" Appellee's Response to Motion to Certify Questions to the Oregon Supreme Court (hereafter "Response") at 7. Second, the State submits ascertaining whether a release mechanism may exist is "not necessary to resolve appellant's constitutional challenges." *Id*. Third, the State argues that "the questions [do] not raise important questions of state law." *Id*.[1]

---

[1]     The response to this argument is addressed in Section B.

The State's first argument fails to even address the *Western* criteria for certification. Whether questions are "likely to be decided by the Oregon Court of Appeals" has no bearing on whether questions should be certified to the Oregon Supreme Court. The State does not even frame its argument on certification principles, but simply that "appellant may have the opportunity to raise his questions to the Oregon Court of Appeals …." Response at 7. The five *Western* criteria do not include concern for the party's "opportunity to raise questions" of law to a state court. Unsurprisingly, for this principle, the State offers no citations.

Worse, this argument invites inconsistent and contradictory rulings between the State and Federal court. Indeed, if this Court determines that Appellant prevails in his 8th Amendment claim because there is no release process, but the State court holds that he has a release process exists, it would make any decision in this Court both incomplete and "supplanted by a controlling decision of a state court." *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 499 (1941); *see also Reetz v. Bozanich,* 397 U.S. 83, 87 (1970) (*Pullman* doctrine is "based on the avoidance of needless friction between federal pronouncements and state policies.").

Second, the State argues that "[t]he certified questions do not need resolution for this court to determine whether appellant is entitled to habeas corpus relief." Response at 8. But in the same breath, the State concedes that "appellant is correct that if a state court subsequently determines that he is eligible for a parole

3

board hearing, that eligibility would render moot his challenge in this case."
Response at 9. The State cannot have it both ways.

The fourth *Western* criteria is concerned with whether the questions "may be
determinative of the cause." *Western Helicopter Services,* 311 Or. at 364. This
factor means that the Oregon Supreme Court's determination must "in one or more
of the forms it could take, have the potential to determine at least one *claim* in the
case." *Id*. at 365. A state court decision that would moot two of Appellant's claims
– thereby ending those controversies – does just that.

In fact, the State's concession invokes the very *Pullman*-type abstention
situation that the certification procedure was designed to resolve. *Western
Helicopter Services,* 311 Or. at 368 ("A principal reason for state certification
statutes was the difficulty associated with so-called '*Pullman*' abstention cases in
the federal court." (citations omitted)). "*Pullman* abstention is an equitable
doctrine that allows federal courts to refrain from deciding sensitive federal
constitutional questions when state law issues may moot or narrow the
constitutional questions." *San Remo Hotel v. City and County of San Franscico*,
145 F.3d 1095, 1104 (9th Cir. 1998). If, as the State concedes, a state court decision
holding Appellant is entitled to the murder review hearing process under Or. Rev.
Stat. § 163.115(5) (1999) "would render moot his challenge in this case[,]"
certification is appropriate. *See Western Helicopter Services,* 311 Or. at 368

("Acceptance of certification in *Pullman*-type abstention cases is important to smooth functioning of the federal judicial system, because the alternative to certification is federal court abstention and the attendant delay until resolution of the derivative state court declaratory judgment action (including trial, the right to a direct appeal, and the right to seek discretionary review after the direct appeal).")[2]

**B.    The State's Argument for Why Discretionary Review Would Not Be Allowed by the Oregon Supreme Court Are Irrelevant and Wrong.**

The State contends that the certified questions are "not an appropriate issue for Oregon Supreme Court review." Response at 11. The State argues that:

> "In deciding whether to accept a certified question, the Oregon Supreme Court considers whether it would grant review if the issue were presented in a petition for review from an Oregon Court of Appeals decision. *Western Helicopter Services,* 311 Or. at 367 ('In those cases in which we ordinarily would not allow review, however, we probably will not accept certification.')."

Response at 11-12. This misrepresents *Western-Helicopter*. The above quoted portion of *Western Helicopter Services* does not stand for the proposition asserted by the State, *i.e.*, that the Oregon Supreme Court decides (or considers) whether to accept a certified question based on whether it would grant review if the issue were

---

[2]    The State argues that certification is not appropriate to "answer the proposed questions just to determine if this federal habeas is moot." Response at 13. This statement highlights the State's misunderstanding of the certification process. The Oregon Supreme Court would not be deciding if the federal habeas is moot and, more to the point, if a state court determination would moot this case that is precisely why certification *is* appropriate.

presented in a petition for review from an Oregon Court of Appeals decision. Instead, the quoted portion of *Western Helicopter Services* was provided in the context of the Oregon Supreme Court's consideration of whether "[t]here is controlling Oregon precedent," and the "additional criteria" it would apply in deciding whether to accept certification when controlling precedent exists. *Id*. 311 Or. at 367.

The State's reasons why the issues are not Oregon Supreme Court worthy are also incorrect. First, the fact that the Oregon Supreme Court denied Appellant's original jurisdiction mandamus petition has no precedential value. That Court offered no basis for its denial, which could include something as benign as the court docket being too full. *See State ex rel Kelly v. Plummer,* 97 Or. 518, 525 (1920) (considering accepting original jurisdiction on rule announced in *Ex Parte Jerman,* 57 Or. 387, 392 (1910) which includes "business of the court"). Or, as is likely the case, denial was based upon Appellant having a "plain, speedy, adequate remedy in the ordinary course of law, precluding issuance of the writ," Or. R. App. P. 11.05(2)(c)(iv), to challenge the Board's order under Or. Rev. Stat. § 144.335.

Second, the State's argument that the "legal questions are narrow, affecting only those few persons sentenced for murder in the brief period of time after *McLain* and before the legislature adopted Or. Rev. Stat. § 163.115 (1999)" is incorrect. The 1999 amendments "apply to offenders convicted of * * * murder

regardless of the date of the crime." Or. Laws 1999, ch. 782, § 2. "Regardless of the date of the crime," on its face, includes the entire universe of offenders convicted of murder. Moreover, Appellant has identified at least two other pending cases before the Oregon Court of Appeals that touch on the proper application of the 1999 amendments.[3]

## C. The State Misrepresents the Lower Court Record and Appellant's Arguments and Misrepresents the Terms of His Plea Agreement.

As a final point to clarify, the State puts forward that "appellant has attempted to convince the Oregon Board of Parole that his sentences for murder were actually life sentences . . . and, thus, that he is entitled to a murder-review hearing (and potential parole) on those convictions." Resp Br at 5. This misstates Appellant's argument completely and this same argument was rejected by the Oregon Court of Appeals when it adopted Appellant's argument, *in toto*, in denying the Board's Motion to Dismiss his parole review under Or. Rev. Stat § 144.335.[4] *See* Ex 1; Att-1 ("Having considered the parties' arguments, the court denies the

---

[3]     *See Anderson v. Board of Parole and Post-Prison Supervision*, CA A180092, Opening Brief at n 10 (questions of whether 1999 legislation requires a juvenile convicted of murder in 1996 to be subject to parole or post-prison supervision, citing over 20 cases where post-prison supervision was imposed for murder committed before 1999 amendments) (no oral argument scheduled); *Black v. Board of Parole and Post-Prison Supervision*, CA A181243 (question of parole or post-prison supervision for 1996 aggravated murder offender sentenced to post-prison supervision, discussing 1999 amendments) (no oral argument scheduled).

[4]     The State cites to Att-2 which is the Board's Motion to Dismiss and not at all reflective of the Appellant's argument.

motion to dismiss for the reasons provided in the response."). In his Response to the Board's Motion to Dismiss, he argued:

> "The board states that petitioner 'asserted' he was sentenced to 'life imprisonment with a 25-year minimum under ORS 163.115(5)(b).' (Motion to Dismiss at 2 n 1). Petitioner has never asserted or otherwise stated he is serving a life sentence for murder. (*See* Att. 8-9), and nothing in the record [] supports the board's statement."

Att-9.

Of course, after Appellant made this argument, the State shifted its position to argue in a Reply that Appellant was not eligible for a murder-review hearing because "[h]e was *not* sentenced to a 300-month minimum period of confinement under ORS 163.115(5)(b) (1999)." (Emphasis in original). That is the same argument that the State attempts to advance here in opining about Appellant's plea agreement "not mention[ing] Or. Rev. Stat. § 163.115(5)(b)" and how "beneficial" and "reasonabl[e]" it would be for Appellant to "not have wanted to be sentenced under Or. Rev. Stat. § 163.115 (1999)[.]" Response at 4 n. 1, n. 5.

The State's construction of Appellant's plea agreement, *i.e.*, that the plea did not require he receive a sentence pursuant to Or. Rev. Stat. § 163.115(5)(b), Response at 11 n. 5, is contradicted by the terms of the plea agreement. The plea provides in relevant part:

> "I know that the maximum sentence that can be imposed upon me for the crime of Murder (an unclassified felony) is 300 months (25 years),

with post prison supervision for life, in accordance with the ruling in *State v. McClain*, 158 Or App 419 (1999) and ORS 137.707, without eligibility for early release, release, or parole."

Respondent's Ex 9, Att-47. It is contradicted by the court's words in *McLain*, wherein the Court of Appeals held that:

> "[T]he proper sentence [for murder] is the 25-year mandatory minimum sentence required by ORS 137.700(a)(A) and ORS 163.115(5)(b), followed by post-prison supervision for life in accordance with OAR 213-005-0004."

*McLain*, 158 Or App at 427. And it is contradicted by the sentencing court record, which shows his trial counsel quoting the aforementioned paragraph as "what McClain holds . . . ." Response at Ex 8; Att-33.

Accordingly, as provided in the plea, a sentence "in accordance with the ruling in *State v. McLain*" means a sentence of 25 years pursuant to Or. Rev. Stat. § 163.115(5)(b) and Or. Rev. Stat. § 137.707. The State is incorrect in saying otherwise and, more importantly, breaches its "promise" to Appellant by stating that he was not sentenced under Or. Rev. Stat. § 163.115(5)(b) in its effort to deprive him of a murder review hearing under that statute. *See Santobello v. New York,* 404 U.S. 257, 262 (1971) ("[W]hen a plea [of guilty] rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.")

## CONCLUSION

This court has stated that "[t]he certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen v. Cohen,* 325 F.3d 1035, 137 (9th Cir. 2003); *see also Murray v. BEJ Minerals, LLC,* 924 F.3d 1070, 1072 (9th Cir. 2019).[5] The questions presented meet this Court's as well as Oregon's certification standards. Whether a youth offender convicted of murder has a liberty right under Or. Rev. Stat. § 163.115(5) (1999) to seek release from prison after serving 25 years in prison based on his or her reformation has "important public policy ramifications" under both Oregon and federal constitutional law. To be sure, Oregon now bars sentencing children to languish to death in prison. Or. Rev. Stat. § 137.707(2). However, these reforms were not made retroactive.[6] Recently, the Oregon Supreme Court has examined,

---

[5]     *Kremen* and *Murray* involved this Court's *sua sponte* orders to certify questions to California and Montana Supreme Courts. It is unclear whether those cases – and the certification factors identify therein – apply when a party independently moves for certification. *See, e.g., U.S. Bank, N.A., Tr. for Banc of Am. Funding Corp. Mortg. Pass-Through Certificates, Series 2005-F v. White Horse Ests. Homeowners Ass'n*, 987 F.3d 858, 867 (9th Cir. 2021) ("Although we may certify a question sua sponte, "[w]e invoke the certification process only after careful consideration and do not do so lightly." *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (en banc) (order) (internal quotations marks omitted).

[6]     *See* Or. Laws 2019, ch 634, § 34, *amended by* Or. Laws 2019, ch. 685, §4, *complied as a note after* Or. Rev. Stat. § 144.397 (2021); *Marteeny v. Brown,*

and rejected, the constitutional solvency of non-retroactive sentencing reforms in death penalty cases for adults. See *State v. Bartol*, 368 Or. 598, 621 (2023). Oregon State courts have yet to comment on whether the ultimate punishment for a juvenile should be held to the same standard. Whether any juvenile previously sentenced to true life, or *de facto* life, terms in prison has a release mechanism available to align with Oregon's current societal standards certainly bears the hallmark of important public policy.

The questions presented are issues that have not been addressed by any court and would have broad ramifications for those who have been convicted of murder. Given the significance of the state policy issues implicated by Appellant's Eight Amendment claim, and the fact that no caselaw from the Oregon Supreme Court directly addresses the questions presented, this Court should exercise its discretion and certify the questions to the Oregon Supreme Court.

DATED: August 28, 2023

/s/ *Thaddeus Betz*
THADDEUS BETZ

/s/ *Marsha Levick*
MARSHA LEVICK

Attorneys for Petitioner-Appellant.

---

321 Or App 250, 286 n 15 (2022) (describing 2019 amendments to juvenile sentencing and application of legislation).

FILED    June 9, 2023 04:55 PM
Appellate Court Records    Att-9

IN THE COURT OF APPEALS OF THE STATE OF OREGON

| | |
|---|---|
| KIPLAND KINKEL, | Appellate Court No. A181419 |
| Petitioner, | |
| v. | PETITIONER'S RESPONSE TO RESPONDENT'S MOTION – DISMISS – NON-APPELLANT/ NON-PETITIONER |
| BOARD OF PAROLE AND POST-PRISON SUPERVISION, | |
| Respondent. | |

The board "moves to dismiss this proceeding for lack of jurisdiction." (Respondent's Motion – Dismiss – Non-Appellant/Non-Petitioner at 3) (hereafter "Motion to Dismiss"). The board does not cite to ORAP 7.05(1)(c), but petitioner presumes that is the basis for this motion.[1] The board appears to make three arguments for why this court lacks jurisdiction. For the reasons that follow, none of those arguments have merit and should be rejected.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 1999, pursuant to a plea agreement with the state, the Appellant was sentenced to serve 300 months (25 years) on each of four separate counts of murder pursuant to ORS 137.707. (Att 1-7) (sentencing judgment).[2] The

---

[1]    ORAP 7.05(1)(c) provides "A party may raise an issue of the jurisdiction of the appellate court by motion at any time during the appellate process."

[2]    Petitioner will cite to the board's attachments to its motion as Att. He will cite to the documents he attached to this response at Supp Att.

Page 1 – PETITIONER'S RESPONSE TO RESPONDENT'S MOTION – DISMISS – NON-APPELLATE/NON-PETITIONER

court ordered those sentences to be served concurrently. *Id*. Petitioner was also

sentenced to serve a life term of post-prison supervision for those crimes. *Id*.

Petitioner received a mandatory sentence of 87 years for other crimes to be served

consecutive to his concurrent murder sentences. *Id*. [3]

On January 27, 2022, petitioner wrote to the board stating that in May of

2023 he will have completed the 25-year minimum period of confinement for his

murder sentences. (Att 8-9). Based on the board's customary practice of scheduling

murder review hearings six month prior to completion of the 25-year minimum

term (Att 25), petitioner "request[ed] the board to schedule his murder review

hearing pursuant to ORS 163.115 (1999) and Or Laws 1999, chapter 782." *Id*.

On March 6, 2023, the board denied his request for a murder review hearing

by letter, informing him that "the board lacks the authority to hold a murder-review

hearing for Mr. Kinkel." (Att 17). The board explained it could not grant relief

because "he is not serving any 'life sentence' for murder" and "[m]oreover, * * *

---

[3]    The board states that petitioner "asserted" he was sentenced to "life imprisonment with a 25-year minimum under ORS 163.115(5)(b)." (Motion to Dismiss at 2 n 1). Petitioner has never asserted or otherwise stated he is serving a life sentence for murder. (*See* Att. 8-9), and nothing in the record to supports the board's statement.

Petitioner's Judgment explicitly states that the court sentenced him to a period of 300 months, "as established by ORS 137.707." (Att 2). ORS 137.707 mandated in 1998, when petitioner committed his crimes, and in 1999, when he was sentenced, the court to impose a 300 month mandatory presumptive sentence pursuant to ORS 163.115. *See* ORS 137.707(1)(a), (4)(a)(A). Contrary to the board's assertion, ORS 163.115(5)(b) does not provide for a life sentence, but only a 300 month mandatory minimum sentence. *But see* ORS 163.115(5)(a) (providing for "punish[ment] of imprisonment for life.").

Page 2 – PETITIONER'S RESPONSE TO RESPONDENT'S MOTION – DISMISS – NON-APPELLATE/NON-PETITIONER

because by the time he would be eligible to attend a murder-review hearing [after 25 years] * * * he will have completely served the terms of incarceration imposed for [his murder sentences]." *Id*.

Petitioner then wrote the board asking whether the "Board considers its letter dated March 6th, 2022, declining to conduct a rehabilitation hearing for AIC Kinkel, a final order and exhausted pursuant to OAR 255-080?" (Supp Att 1). The board promptly responded, stating "Yes, you can file for administrative review now, thanks." (Supp Att 1). Petitioner then filed an OAR 255, Exhibit O administrative review of the board's order. (Att 10-15). On April 11, 2023, board chairperson Greta Lowry informed petitioner that "The Board denies administrative review as there is no final Board action to review, as the Board has no authority to hold a murder-review hearing." (Att 26).

## II. THE BOARD'S MOTION TO DISMISS SHOULD BE DENIED

### A. This Court Has Jurisdiction to Review the Orders in This Case.

The board first contends that it "lacks jurisdiction over petitioner's request for a murder-review hearing under ORS 163.115 (1999) because petitioner was not sentenced to life imprisonment with a 25-year minimum term, pursuant to ORS 163.115(5)(b)." (Motion to Dismiss at 3). In the board's view, because it lacks jurisdiction over petitioner's request, "this court lacks jurisdiction over th[e] orders" petitioner seeks review of under ORS 144.335. *Id*.

The obvious problem with the board's "jurisdictional" argument is that it turns entirely on the board's interpretation of ORS 163.115 (1999), which is the disputed issue presented in this case. Petitioner argues that ORS 163.115(5) (1999) *does* apply to petitioner and that the board has erroneously interpreted that provision. If petitioner is correct, then the board and (under the board's logic) this court would have jurisdiction to review the board's order under ORS 144.335.

The jurisdictional authority of this court to review final orders of the board under ORS 144.335, however, does not turn on the board's interpretation of its own "jurisdictional" authority. Rather, it depends on the terms of ORS 144.335. *See Taylor v. Board of Parole and Post-Prison Supervision*, 200 Or App 514, 518 (2005) ("The right to obtain appellate review is statutory and is subject to limitations imposed by the statute conferring the right.").

The Oregon Supreme Court has rejected a similar "jurisdictional" argument in a different agency proceeding. In *Forelaws on Bd. v. Energy Facility Sitting Council*, 303 Or 541, 543 (1987) the Court addressed the issue of whether a determination of the Energy Facility Siting Council (Council) "that it lacks jurisdiction over the subject of an application" was reviewable in the Supreme Court under *former* ORS 469.400(1) or the Court of Appeals under ORS 183.482. *Former* ORS 469.400(1) specified that "[j]urisdiction for judicial review of the council's approval or rejection of an application for a site certificate is conferred upon the Supreme Court." *Id*. at 543. The Council argued that the order being challenged was neither an "approval" nor a "rejection" of an application for a site certificate, but rather a determination that it did not have

Page 4 – PETITIONER'S RESPONSE TO RESPONDENT'S MOTION – DISMISS – NON-APPELLATE/NON-PETITIONER

"jurisdiction" over the application. *Id.* at 544. The Court disagreed with the Council's

argument and held that "if the order at issue otherwise is a reviewable order, it is

reviewable in this court." *Id.* at 543. The Court explained that

> "[t]he dispute once again illustrates the pitfalls of the term 'jurisdiction,'
> particularly when a conclusion about jurisdiction rests on a conclusion
> about facts disputed on the merits. When a party applies to an agency for a
> permit to make, keep, store, or operate X, the agency might say that it
> rejects the application because the object is not an X and therefore no
> permit form the agency is needed. It is no less a 'rejection of an
> application,' in the words of ORS 469.400(1), if the agency also explains
> that only permits for X are within its jurisdiction. The agency's refusal may
> be wrong, and if it is, it will not escape judicial review on grounds that the
> agency 'lacked jurisdiction.'
>
> "We do not know whether the Council's conclusion was right or wrong
> here. We hold only that under ORS 469.400(1) the petitioners for review
> are properly before this court."

303 Or at 544.

Here, as in *Forelaws,* the board's decision to deny petitioner a murder-review

hearing on the ground that ORS 163.115(5) (1999) only grants the board "jurisdiction"

over prisoners sentenced to life imprisonment with a 25 year minimum pursuant to ORS

163.115(5)(b), "may be wrong, and if it is, it will not escape judicial review on grounds

that the agency 'lacked jurisdiction.'" 303 Or at 544.

Judicial review of board orders is governed by ORS 144.335(1), which provides,

in part:

> "(1) A person over whom the State Board of Parole and Post-Prison
> Supervision exercises its jurisdiction may seek judicial review of a final
> order of the board as provided in this section if:

"(a) The person is adversely affected or aggrieved by a final order of the board; and

"(b) The person has exhausted administrative review as provided by board rule."

The board appears to argue that the phrase "exercises its jurisdiction" in ORS 144.335(1) precludes judicial review if the board itself lacks jurisdiction.[4] The board does not offer any analysis what the legislature intended in using that phrase or how it deprives this court of jurisdiction to review the board's order in this case. The phrase "exercises its jurisdiction," however, appears to simply mean the board has jurisdiction over the person.

The board, like any administrative agency, is a creature of statute. *Marteeny v. Brown,* 321 Or App 250, 386, *rev den,* 370 Or 303 (2022). As such, the board derives its authority from "(1) the enabling legislation that mandates that particular agency's function and grants power and (2) from general laws affecting administrative bodies." *1000 Friends of Oregon v. LCDC (Clatsop Co.)*, 301 Or 622, 627 (1986).

In this case, the board "exercises its jurisdiction" over petitioner both as a criminal defendant sentenced to post-prison supervision for a crime committed after November 1, 1989 and, more specifically, as a prisoner convicted of murder. *See* Or Law 1989, ch 790, § 31 (ORS 144.096 to ORS 144.108 "apply only to defendants convicted of a felony committed on or after November 1, 1989."); Or Laws 1999, ch 782, § 2 (HB 3586)

---

[4]     The board does not argue that petitioner is not "adversely affected or aggrieved" by the board's order. The board also does not argue that petitioner has failed to exhaust administrative review as provided by board rule. The board does contend that its order is not a "final order," which petitioner will address in the next section.

(citing certain provisions in ORS chapter 144 "apply only * * * to offenders convicted of * * * murder regardless of the date of the crime.").

The specific statute at issue in this case is ORS 163.115 (1999). In 1999, the Oregon Legislature amended ORS 163.115 to provide the board the authority to release prisoners convicted of murder to parole and post-prison supervision under the process set out in that statute. Or Laws 1999, ch 782, § 4. This Court has held that those 1999 amendments "applied to any person who had been <u>convicted</u> of murder under ORS 163.115, regardless of the date the crime was committed." *State v. Giles,* 254 Or App 345, 348 (2012) (citing Or Laws 1999, ch 782, § 2) (emphasis added). The legislature made 1999 amendments effective on October 23, 1999, a few weeks before petitioner's sentencing.

ORS 163.115(5)(c) provides, in part:

> "At any time after completion of a minimum period of confinement pursuant to paragraph (b) of this subsection, the State Board of Parole and Post Prison Supervision, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. * * *."

On its face, ORS 163.115(5)(c) (1999) grants the board the authority, indeed the duty, to hold a hearing upon the petition of a prisoner "any time after completion of a minimum period of confinement pursuant to [ORS 163.115(5)(b)]."[5] The text of ORS 163.115(5)(c) (1999) does not restrict the

---

[5]     ORS 163.115(5)(b) (1999), which the board erroneously contends provides for life sentences (Motion to Dismiss at 3) ("petitioner was not sentenced to life imprisonment with a 25-year minimum term, pursuant ORS 163.115(5)(b), provides:

board's authority to hold a hearing only for prisoners sentenced to "life imprisonment," as the board argues in its motion. The only sentencing limitation to the board's authority to hold a hearing is that the prisoner completed the minimum period of confinement under ORS 163.115(5)(b), which is 25 years.

In sum, the board "exercises its jurisdiction" over petitioner pursuant to both general and specific statutory authority as a result of his sentence. As such, this court has jurisdiction under ORS 144.335(1) to review the board's orders denying petitioner's request for a hearing under ORS 163.115(5) (1999).

### B. The Board's Order Is A Final Order For Purposes of Judicial Review

The board's next argues that this court lacks jurisdiction to review the board's decision denying petitioner's request for a hearing under ORS 163.115(5) (1999) because "[i]t is doubtful * * * that the board's letters are final orders." (Motion to Dismiss at 4). In support of this argument, the board does not rely on the text of ORS 144.335 to argue that the challenged orders in this case were not "final orders," but rather relies entirely on two Oregon Supreme Court decisions, *Mastriano v. Board of Parole and Post-Prison Supervision,* 342 Or 684 (2007) and *Dawson/Fletcher v. Board of Parole and Post-Prison*

---

"(b) When a defendant is convicted of murder in the second degree under this section, the court shall order that the defendant shall be confined for a minimum of 25 years without possibility of parole, release to post-prison supervision, release on work release or any form of temporary leave or employment at a forest or work camp."

*Supervision*, 346 Or 643 (2009), which the board characterizes as "instructive" in showing the challenged orders were not "final orders."(Motion to Dismiss at 4).

*Mastriano* and *Dawson/Fletcher* are inapposite. In *Mastriano,* the Supreme Court addressed whether the board's denial of a prisoner's request to "reopen and reconsider" an earlier order constituted a "final order" within the meaning of ORS 144.335(1). 342 Or at 686. The Court held that "a board order denying reopening and reconsideration of an earlier final order is not itself a final order for purposes of judicial review pursuant to ORS 144.335(1)." *Id.*

In *Dawson/Fletcher*, the Supreme Court addressed the issue of whether the board's denial of two prisoner's request to "reopen and reconsider earlier orders" were "final orders" subject to review under ORS 144.335(1) where, the petitioner argued, the board "constructively reopened" the earlier final order. 346 Or at 646. The Court examined the challenged orders and concluded that the board had not "constructively reopened" the prior orders and therefore reaffirmed its earlier holding in *Mastriano* that board orders denying "reopening and reconsideration were not final orders for purposes of judicial review[.]" *id*. at 660.

Unlike the prisoners in *Mastrian* and *Dawson/Fletcher,* petitioner did not request the board to "reopen and reconsider" earlier orders. He made an initial request for a hearing pursuant to ORS 163.115(5) (1999) and the board denied that request and provided petitioner its interpretation of ORS 163.115(5) as inapplicable to him. The board had never previously issued an order denying petitioner's request. Accordingly, *Mastriano* and *Dawson/Fletcher* have no application to the circumstances here.

Page 9 – PETITIONER'S RESPONSE TO RESPONDENT'S MOTION – DISMISS – NON-APPELLATE/NON-PETITIONER

The board's argument that its order finding "it lacked statutory authority to hold such a hearing" under ORS 163.115(5) (1999) is "analogous to a board order in which the board refuses to reopen and reconsider a prior order" is conclusory. The board does not articulate how those two decisions are analogous or, more importantly, why the board's initial decision denying petitioner's request was not a "final order" under ORS 144.335. The proper inquiry into whether the board's orders constitute a "final order" requires examination into the meaning of that term in ORS 144.335.

"ORS 144.335 does not explain what a 'final order' is for purposes of judicial review of a board decision." *Dawson/Fletcher*, 346 Or at 649. However, the Oregon Supreme Court has construed the 1999 amendments to ORS 144.335 and the Board's own rules under OAR chapter 255, Division 80 to conclude that a final order for purposes of judicial review consists of (1) an order of the board and (2) exhaustion of "administrative remedies," which "culminates in an order – including the [Administrative Review Response] – that was 'final for purposes of judicial review.'" *Jenkins v. Board of Parole and Post-Prison Supervision*, 356 Or 186, 207 (2017) (quoting *Mastriano*, 342 Or at 696).

Here, the board issued a letter decision denying request for the board to schedule his murder review hearing.[6] That decision "adversely affected and aggrieved" petitioner because he "did not receive the relief sought[.]" *Cohron v. Board of Parole and Post-*

---

[6] "The order of the board need not be in any special form, and the order is sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority." ORS 144.335(3).

*Prison Supervision*, 298 Or App 747, 749-750 (2019) (citing *Richards v. Board of Parole and Post-Prison Supervision*, 339 Or 176 (2005)). Petitioner subsequently sought to "exhaust administrative review" of the board's order by filing an administrative review request in accordance with the board's rules and on the direction of the board. The board "denie[d] administrative review" by again issuing a letter decision to petitioner. Those two letter decisions satisfy the requirements under ORS 144.335(1) and constitute a final order for purposes of judicial review under ORS 144.335. As such, the court has jurisdiction to review the board's final orders at issue in this case.

### C.     Petitioner's Petition for Mandamus Relief Does Not Deprive This Court of Jurisdiction under ORS 144.335.

The board's last argument appears to be that because the Oregon Supreme Court denied his petition for mandamus relief this court lacks jurisdiction under ORS 144.335 to review the board's orders. (Motion to Dismiss at 5). The board's argument is wholly frivolous.[7]

### III.     Conclusion

For the foregoing reasons, the board's motion to dismiss should be denied.

DATED June 8, 2023.

Respectfully submitted,

*/s/ Thaddeus Betz*
THADDEUS BETZ, OSB No. 062745

---

[7]     In its motion, the board has provided various attachments which were not part of the board proceeding, including petitioner's original jurisdiction mandamus petition. The board has made no effort to introduce those documents properly.

Page 11 – PETITIONER'S RESPONSE TO RESPONDENT'S MOTION – DISMISS – NON-APPELLATE/NON-PETITIONER

Oregon Justice Resource Center
P.O. Box 5248
Portland, OR 97208
(971) 346-4798
tbetz@ojrc.info
Attorney for Petitioner

Att-21

**NOTICE OF FILING AND PROOF OF SERVICE**

I certify that on June 9, 2023, I directed the original Petitioner's Response to Respondent's Motion – Dismiss – Non-Appellate/Non-Petitioner to be electronically filed with the Appellate Court Administrator, Appellate Records Section, and electronically served upon Philip Thonennes, attorney for respondent, by using the court's electronic filing system.

*/s/ Thaddeus Betz*
THADDEUS BETZ, OSB No. 062745
Attorney for Petitioner

 Gmail

---

## FW: Emailing: Kinkle, Kip, ltr. to atty Betz 3.6.23.pdf

**thadbetz@gmail.com** <thadbetz@gmail.com>                                    Thu, Apr 6, 2023 at 1:28 PM

-----Original Message-----
From: COONS Kim * DOC <Kim.COONS@paroleboard.oregon.gov>
Sent: Thursday, April 6, 2023 1:20 PM
To: thadbetz@gmail.com
Subject: RE: Emailing: Kinkle, Kip, ltr. to atty Betz 3.6.23.pdf

Yes, you can file for administrative review now, thanks.

-----Original Message-----
From: thadbetz@gmail.com <thadbetz@gmail.com>
Sent: Thursday, April 6, 2023 11:10 AM
To: COONS Kim * DOC <Kim.COONS@paroleboard.oregon.gov>; Webmaster BPPPS
<BPPPS.Webmaster@paroleboard.oregon.gov>
Subject: RE: Emailing: Kinkle, Kip, ltr. to atty Betz 3.6.23.pdf

Ms. Coons- Please forward this to Chairperson Lowry and the other Board
members:  To clarify, does the Board consider its letter dated March 6th,
2022, declining to conduct a rehabilitation hearing for AIC Kinkel, a final
order and exhausted pursuant to OAR 255-080?


Thank you,

Thaddeus Betz



-----Original Message-----
From: thadbetz@gmail.com <thadbetz@gmail.com>
Sent: Monday, March 6, 2023 1:30 PM
To: 'COONS Kim * DOC' <Kim.COONS@paroleboard.oregon.gov>
Subject: RE: Emailing: Kinkle, Kip, ltr. to atty Betz 3.6.23.pdf

Receipt confirmed.  No mailing necessary.

-----Original Message-----
From: COONS Kim * DOC <Kim.COONS@paroleboard.oregon.gov>
Sent: Monday, March 6, 2023 1:18 PM
To: 'thadbetz@gmail.com' <thadbetz@gmail.com>
Subject: Emailing: Kinkle, Kip, ltr. to atty Betz 3.6.23.pdf

Please confirm receipt, is email fine or do you want a copy sent to you
through the mail?

Thanks.


Kim Coons,
Hearing/Scheduling Specialist
Oregon Board of Parole and Post-Prison Supervision
(971) 718-6163
Kim.Coons@paroleboard.oregon.gov

Your message is ready to be sent with the following file or link
attachments:

Kinkle, Kip, ltr. to atty Betz 3.6.23.pdf


Note: To protect against computer viruses, e-mail programs may prevent
sending or receiving certain types of file attachments.  Check your e-mail
security settings to determine how attachments are handled.